UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DUAHIT JOB GUEVARA-VASQUEZ, <br> *Petitioner* <br><br> v. <br><br> MAJOR ROSE THOMPSON, WARDEN OF KARNES COUNTY IMMIGRATION PROCESSING CENTER; ACTING FIELD DIR. SYLVESTER M ORTEGA, ENFORCEMENT AND REMOVAL OPERATIONS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ACTING DIR. OF ICE TODD LYONS, SEC. OF DHS KRISTI NOEM, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; AND PAMELA JO BONDI, U.S.A.G.; <br> *Respondents* | Case No. SA-25-CA-01372-XR |

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

On this date, the Court considered Duahit Job Guevara-Vasquez's Petition for a Writ of Habeas Corpus (ECF No. 1), the Respondents' response (ECF No. 7), and Petitioner's reply (ECF No. 7). After careful consideration, the petition is **GRANTED**.

### BACKGROUND

Petitioner Duahit Job Guevara-Vasquez is a native and citizen of Peru who entered the United States without inspection in February 2018. ECF No. 1 ¶ 1. Shortly after his entry, he was apprehended and detained by the Department of Homeland Security ("DHS") and issued an expedited removal order under Section 235(b)(1) of the Immigration and Nationality Act ("INA") ("INA"), codified at 8 U.S.C. § 1225(b)(1). *Id.* ¶¶ 1, 19. While detained, Petitioner was found to have a credible fear of persecution and was issued a Notice to Appear ("NTA"), placing him in "full" removal proceedings before an immigration judge. *Id.* ¶ 19; *see* ECF No. 1-3.

The 2018 NTA identified Petitioner as "an alien present in the United States who has not been admitted or paroled"—not an "arriving alien"—and charged him with (1) being present in the United States without being admitted or paroled (under 8 U.S.C. § 1282(a)(6)(A)(i)), and (2) not possessing valid entry documents at time of application for admission (under § 212(a)(7)(A)(i)(I)). *See* ECF No. 1-3. The latter charge was subsequently withdrawn by the Immigration Court. *See id.* at 1, 2. Additionally, the NTA expressly stated that the "Section 235(b)(1) order was vacated" and that the NTA "is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution of torture." *Id.*

In March 2018, DHS issued a Notice of Custody Determination and set a bond of $7,500, authorized "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act." ECF No. 1-2. Petitioner posted bond and was released from immigration detention. ECF No. 1-3 at 1. In August 2022, Petitioner reached an agreement with DHS, and his removal proceedings were dismissed without prejudice. ECF No. 1-5. Petitioner has not had any brushes with law enforcement since his removal proceedings were dismissed in 2022. ECF No. 1 ¶ 22.

On October 14, 2025, Petitioner was rearrested by Respondents while driving home in Virginia. Following his arrest, DHS issued a new NTA to commence new removal proceedings, charging him, again, inadmissibility under INA § 212(a)(6)(A)(i) and INA § 212(a)(7)(A)(i)(I). ECF No. 1-4 at 4. Like the 2018 NTA, this new NTA identifies Petitioner as "an alien present in the United States who has not been admitted or paroled." *Id.* But, unlike the 2018 NTA, the new NTA does not reference Petitioner's 2018 expedited removal order or his credible fear of persecution. *Compare* ECF No. 1-4 at 1 (2025 NTA) *with* ECF No. 1-3 at 1–2 (2018 NTA).

Petitioner has been detained since his arrest and is currently detained at the Karnes County Immigration Processing Center in Karnes City, Texas. ECF No. 1-6. He asserts that his continuing detention without bond violates the INA and his constitutional due process rights. ECF No. 1.

## LEGAL STANDARD

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

## DISCUSSION

The parties dispute both whether the Court has jurisdiction to order the relief Petitioner has requested and whether Petitioner is entitled to that relief. The Court considers its jurisdiction over this case before turning to the merits.

### I. This Court Has Jurisdiction

As a general matter, this Court has jurisdiction over Petitioner's habeas petition pursuant to 28 U.S.C. §§ 1331 and 2241. *See Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) ("A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law."). Respondents insist that provisions of the INA—specifically 8 U.S.C. §§ 1252(g) and (b)(9) and § 1225(b)(4)—strip the Court of jurisdiction here. ECF No. 6 at 8–9. The Court disagrees.

### A. Section 1252(g) Does Not Preclude Jurisdiction

Respondents assert that the Court lacks jurisdiction under Section 1252(g), which provides:

> [N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). But Section 1252(g) "applies only to three discrete actions that the Attorney general may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original) (quoting 8 U.S.C. § 1252(g)). It "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal orders and thus does not implicate [S]ection 1252(g)." *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025) (cleaned up) (quoting *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000)).

Petitioner is not challenging removal proceedings but seeks release—in habeas corpus—because Respondents have unlawfully detained him. ECF No. 1 ¶¶ 27, 50; *see also* ECF No. 7 at 4. "Such claims are not barred by § 1252(g)." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025).

### B. Section 1252 (b)(9) Does Not Preclude Jurisdiction

Respondents argue that 8 U.S.C. § 1252(b)(9) precludes jurisdiction. ECF No. 6 at 9. Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus . . . , or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

4

This provision "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (cleaned up). It does not "'sweep within its scope claims with only a remote or attenuated connection to the removal of an alien'. . . [or] preclude review of claims that 'cannot be raised efficaciously within the administrative proceedings' already available." *Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018) (quoting *Aguilar v. I.C.E.*, 510 F.3d 1, 9 (1st Cir. 2007)). Finally, it applies only "[w]ith respect to review of an order of removal." 8 U.S.C. § 1252(b); *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025); *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020); *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *2 (D. Colo. Oct. 24, 2025).

Respondents' argument that Section 1252(b)(9) bars this Court's jurisdiction over the petition fails for at least two reasons. First, Petitioner's claim—that Respondents lack "legal authority to subject [him] to mandatory detention under § 1225 instead of detention with a bond hearing under § 1226(a)"—"is not a review [of] an order of removal, the decision to seek removal, or the process by which removability will be determined." *Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3 (S.D. Cal. Nov. 4, 2025); *Aguilar*, 510 F.3d at 11 ("[T]he legislative history indicates that Congress intended to create an exception for claims 'independent' of removal."). Because Petitioner challenges only his ongoing detention during the pendency of his removal proceedings, "§ 1252(b)(9) does not present a jurisdictional bar." *See Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018).[1]

---

[1] With respect to § 1252(b)(9), *Jennings* expressly rejected an overbroad reading of "arising from" as "uncritical literalism" that leads "to results that no sensible person could have intended." 83 U.S. at 293–94 (citation modified).

5

Second, Petitioner cannot "efficaciously" raise his claims "'within the administrative proceedings' already available." *Duron*, 898 F.3d 647 (quoting *Aguilar*, 510 F.3d at 10). The core of this dispute is whether Petitioner can be detained with no bond hearing—that is, with no administrative opportunity to contest his detention—pending a removal determination. If Section 1252(b)(9) precluded this habeas petition, Petitioner's detention would be "effectively unreviewable," *Jennings*, 583 U.S. at 293, especially considering the BIA's novel position that immigration judges lack authority to even *entertain* bond requests, *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025). "By the time a final order of removal was eventually entered, the allegedly [illegal] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review." *Jennings*, 583 U.S. at 293.

### C. Section 1225(b)(4) Does Not Preclude Jurisdiction

Curiously, Respondents assert that, under Section 1225(b)(4), judicial review of Petitioner's removability is "available only through the court of appeals following a final administrative order of removal." ECF No. 6 at 9. But even under Respondents' flawed theory that the Petitioner is challenging the adjudication of his removal proceedings (rather than his detention), Petitioner's challenge to a presumably unsuccessful application for admission would not arise under Section 1225(b)(4), which governs challenges brought by an immigration officer to favorable admissibility decisions made by another officer:

> The decision of the examining immigration officer, if *favorable to the admission of any alien*, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title.

---

Indeed, *Jennings* described the "expansive interpretation of § 1252(b)(9)" proposed by Respondents as "absurd," and inevitably "lead[ing] to staggering results." *Id*. at 293.

6

8 U.S.C. § 1225(b)(4) (emphasis added).

Section 1225(b)(4) is plainly inapplicable to Petitioner, who has not received any favorable determination of his admissibility. Moreover, Section 1221(b)(4) applies to challenges to favorable admissions decisions brought by *other immigration officers*. It has nothing to do with the scope of DHS's detention authority or the federal courts' jurisdiction over challenges to detention. Indeed, as another court in this District recently observed, § 1225(b)(4) does "not speak to the distinction between detention and deportability that this Court has explained is essential to the jurisdictional analysis." *See Erazo Rojas*, 2025 WL 3038262, at *2. Accordingly, Respondents' reference to 8 U.S.C. § 1225(b)(4) is simply misplaced.

In sum, Petitioner challenges only the legality of his ongoing detention without a bond hearing. He is not challenging Respondents' decision to execute a removal order, to commence or adjudicate removal proceedings, or to detain him in the first place. The Court has jurisdiction to consider Petitioner's claims.

**II.     Petitioner's Detention Is an Unlawful Application of 8 U.S.C. § 1225(b)(1)**

Moving to the merits, Petitioner claims that Respondents lack statutory authority under the INA to detain him without a bond hearing and are depriving him of due process by doing so. *See* ECF No. 1 at 16–20. Because the Court agrees with Petitioner's statutory arguments, it need not reach his constitutional claims.

**A.     Legal Framework for Immigration-Related Detention**

The INA prescribes three basic forms of detention for noncitizens in removal proceedings.

First, the INA provides for mandatory detention of noncitizens subject to *expedited removal* under 8 U.S.C. § 1225(b)(1) and other recent arrivals seeking admission under 8 U.S.C. § 1225(b)(2). As the Supreme Court has explained, Section 1225 "applies primarily to

7

[noncitizens] seeking entry into the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Noncitizens detained under this provision may be released only through DHS's exercise of its parole authority under 8 U.S.C. § 1182(d)(5)(A). *Id.* at 300.

Second, the INA authorizes the discretionary detention of noncitizens in standard, non-expedited (i.e., "full") removal proceedings before an immigration judge under 8 U.S.C. § 1226. *See* 8 U.S.C. § 1229a; § 1226(a) ("[A]n alien *may* be arrested and detained. . . .") (emphasis added).[2] Noncitizens in detention under Section 1226(a) are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d).

Last, the INA also provides for detention of noncitizens who have been previously ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). This provision is not at issue in the instant matter.

For nearly three decades, Respondents consistently considered noncitizens present in the United States without having been admitted or paroled as detained under 8 U.S.C. § 1226(a), thus entitling them to bond hearings. *See, e.g.*, Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (stating that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination"). Consistent with this longstanding understanding, the Supreme Court recently confirmed that "§ 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. On the other hand, "the language

---

[2] Noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention. *See* 8 U.S.C. § 1226(c).

of §§ 1225(b)(1) and (b)(2) is quite clear": "§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Id*. at 297, 303.[3]

Earlier this year, Respondents adopted a novel theory that noncitizens who are present in the United States without admission or parole are ineligible for bond hearings. In July 2025, Todd Lyons, Acting Director of ICE, issued an internal memorandum (the "Lyons Memorandum") explaining that the agency had "revisited its legal position" and "determined that [Section 1225] of the [INA], rather than [Section 1226], is the applicable immigration detention authority for all applicants for admission."[4] Ultimately, the Board of Immigration Appeals ("BIA") adopted this position in a precedential decision, *Matter of Hurtado*, 29 I. & N. Dec. at 220, holding that all noncitizens who entered the country without inspection—no matter how long they have been present in the country—are subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2).

Numerous courts, including this one, have rejected the argument that Section 1225(b)(2) applies to all aliens who, like Petitioner, are already in the country but entered without inspection. *See, e.g.*, *Mboup v. Field Off. Dir. of N.J. Immigr. & Customs Enf't*, No. 2:25-CV-16882 (MEF), 2025 WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (same).

---

[3] Even if this language in *Jennings* is dicta, courts in the Fifth Circuit "are generally bound by Supreme Court dicta, especially when it is recent and detailed." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024) (quoting *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016)).

[4] "The existence of the memorandum was first reported by the Washington Post on July 14, 2025. Maria Sacchetti & Carol D. Leonnig, *ICE declares millions of undocumented immigrants ineligible for bond hearings*, Washington Post (July 14, 2025), https://www.washingtonpost.com/immigration/2025/07/14/ice-trump-undocumented-immigrants-bond-hearings/ [https://perma.cc/LN4F-FJDG]. The memorandum itself was subsequently leaked by legal advocacy groups. *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited July 24, 2025) [https://perma.cc/4Q6X-GAZC][.]" *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 n.10 (D. Mass. 2025).

These opinions rely on several rationales, from statutory language and context to legislative history and longstanding agency practice. *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases).

But the Court need not address the reasoning in those cases here because Respondents now *concede* that Petitioner is not detained under 8 U.S.C. § 1225(b)(2). ECF No. 6 at 2. Instead, Respondents offer an entirely new statutory hook for his re-detention, one never addressed in the Lyons Memorandum or *Matter of Hurtado*: Section 1225(b)(1)(A)(iii)(II).

### B. Section 1225(b)(1) Does Not Apply to Petitioner's Detention

Section 1225(b)(1) requires the detention of two categories of aliens subject to expedited removal: (a) "arriving" aliens and (b) aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to" being determined inadmissible under either 8 U.S.C. § 1182(a)(6)(C) or 8 U.S.C. § 1182(a)(7). *See* 8 U.S.C. § 1182(a)(6)(C) (discussing aliens who seek admission by fraud or willful misrepresentation); *id.* § 1182(a)(7) (discussing required documentation for admission of immigrants and nonimmigrants).

Respondents insist Petitioner is detained under 8 U.S.C. § 1225(b)(1)(A)(iii)(II) because, seven years ago, he was detained at the border and then passed a credible fear interview. ECF No. 6 at 6. Not only is Respondents' position inconsistent with the one they took in 2018, it conflicts with the plain language of § 1225(b)(1).

Petitioner has never been designated as an "arriving" alien, as evidenced by both his 2018 and 2025 NTAs. ECF No. 1-3 at 1, 2; ECF No. 1-4 at 1. Thus, to contend that his present detention is authorized under 8 U.S.C. § 1225(b)(1), Respondents must show that Petitioner was determined to be inadmissible under either 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7) *within two years* of his entry into the United States.

10

Petitioner has not been determined to be inadmissible under either provision at any point in the seven years since he was released on bond. While Petitioner was originally charged with inadmissibility under § 1182(a)(7) at the time of his entry, that charge was withdrawn by the immigration court, and DHS did not appeal. *See* ECF No. 1-3 at 1, 2. Respondents did not make an admissibility determination under Section 1225(b)(1)(A), and, in any event, mere "unlawful presence" under Section 1182(a)(6)(A)(i) cannot, as a textual matter, serve as the grounds for such a determination. *Cf. Lopez v. Lyons*, No. 2:25-CV-03174-DJC-CKD, 2025 WL 3124116, at *2 (E.D. Cal. Nov. 7, 2025) (rejecting the argument that someone's initial contact with immigration officials was a "determination of inadmissibility" under Section 1225(b)(1) because "the Order of Release on Recognizance specifically state[d] that Petitioner was released pursuant to [S]ection 1226"). Additionally, DHS later agreed to dismiss Petitioner's removal proceedings altogether. *See* ECF No. 1-5. At that point, any expedited removal process that Petitioner might once have been subject to, and any "full" removal proceedings arising from it, had ended. DHS's subsequent decision in 2025 to re-charge Petitioner under § 1182(a)(7) through a newly issued NTA cannot retroactively place him within the ambit of § 1225(b)(1)(A)(iii)(II), because that charge was made after he had entered and been present in the United States for more than two years.

Moreover, Section 1225(b)(1) requires detention for certain aliens undergoing *expedited* removal proceedings. 8 U.S.C. § 1225(b)(1), (b)(1)(B)(ii), (b)(1)(B)(iii)(IV). But Respondents admit that Petitioner is currently in "full" removal proceedings. ECF No. 6 at 6.[5] Respondents have conceded in other cases that an alien cannot simultaneously be in both full and expedited removal proceedings. *Patel v. Tindall*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, at *5 (W.D. Ky. Oct. 3,

---

[5] Indeed, the newly issued NTA itself confirms that Petitioner is no longer subject to expedited removal under 8 U.S.C. § 1225(b)(1), as the boxes referencing his credible fear interview and any prior expedited removal order were left unchecked—unlike in his 2018 NTA. ECF Nos. 1-3, 1-4.

2025) (collecting cases). In short, even if Section 1225(b)(1) could—as a general matter—apply to Petitioner, he is not currently subject to expedited removal proceedings and thus is not subject to Section 1225(b)(1)'s detention provisions. Respondents cannot detain Petitioner in connection with expedited removal proceedings that do not exist.

For these reasons, Respondents may not detain Petitioner under Section 1225(b)(1). Because the Court concludes Section 1225(b)(1) is inapplicable, Petitioner's present detention necessarily falls under 8 U.S.C. § 1226, which entitles him to a bond hearing. *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) ("[T]he Court concludes that § 1225(b)(2) is not applicable to Mr. D.S., he is subject to the discretionary detention regime under § 1226(a), and his continued detention with a bond hearing is contrary to the laws of the United States. If Respondents seek to continue detaining Mr. D.S., they must provide him with a bond hearing.").

### III. Appropriate Relief

Because Petitioner cannot be detained under Section 1225(b)(2), the remaining option is Section 1226. As Respondents do not claim that Petitioner is being detained under Section 1226, however, "the Court sees no reason to consider" Section 1226 as a basis for Petitioner's current detention. *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 223 n.23 (D. Mass. 2025). His detention is unlawful, and habeas relief is proper.

Petitioner requests attorney's fees under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d)(1)(A). Because fees under the EAJA are not available in habeas corpus proceedings like this one, that request is denied. *Barco v. Witte*, 65 F.4th 782. (5th Cir. 2023).

**CONCLUSION**

For the foregoing reasons, the Petition for Habeas Corpus (ECF No. 1) is **GRANTED**. It is **ORDERED** that:

1. Respondents shall **RELEASE** Petitioner Duahit Job Guevara-Vasquez from custody, under appropriate conditions of release, to a public place by **no later than 2:00 p.m.** on **November 26, 2025;**

2. Respondents shall **NOTIFY** Petitioner's counsel of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release;**

3. The parties shall **FILE** a Joint Status Report **no later than 7:00 p.m.** on **November 26, 2025**, confirming that Petitioner has been released; and

4. Respondents are **ENJOINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decision maker pursuant to 8 U.S.C. § 1226.

The Clerk is **DIRECTED** to **CLOSE** this case. A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 26th day of November, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE